IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN T. BURSIC,        )  | |
|        Plaintiff,      ) | |
|                                          ) | |
|     v.                                          )   | Civil Action No. 06-603 |
|                                          ) | |
| COMMISSIONER OF SOCIAL     ) | |
| SECURITY,                                   ) | |
|        Defendant.     ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the plaintiff's motion for summary judgment (Docket No. 7) be granted; that the decision of the Commissioner be reversed and that judgment be entered accordingly.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment.

On May 3, 2006, Stephen T. Bursic, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On October 21, 2003, the plaintiff filed an application for disability benefits alleging disability as of December 3, 2002 (R. 64-66), and benefits were denied on February 2, 2004 (R. 51-54). The plaintiff requested a hearing and pursuant to that request a hearing was held on July

18, 2005 (R.33-48). In a decision dated September 20, 2005, benefits were denied (R.9-20), and on September 21, 2005, reconsideration was requested (R.8). Upon reconsideration and in a decision dated March 8, 2006, the Appeals Council affirmed the prior determination (R.4-6). On May 3, 2006, the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

At the hearing held on July 18, 2005, (R.33-48), the plaintiff appeared with counsel (R.35) and testified that he was born on December 2, 1966 (R.35); that he graduated from high school and attended vocational school for two years (R.36); that he worked in the heating, air-conditioning and ventilation business (R.36); that he was injured at work on December 3, 2002 (R.36), and that he was awarded Worker's Compensation benefits (R.36)

The plaintiff also testified that he suffered a herniated disc (R.36); that he had a lumbar fusion performed (R.37); that he experiences constant back pain (R.39); that he also experienced a bowel obstruction and a pulmonary embolism (R. 37); that he has difficulty sleeping, sitting and standing (R.38); that he suffers from grogginess from his pain medication (R.40); that he experiences shortness of breath on exertion (R.41); that his doctor has not released him for work (R.43); that he has to remain in the house two or three days a week (R.43); that he suffers from numbness in his legs (R.44), and that he squirms when seated (R.44).

At the hearing a vocational expert was called upon to testify (R.45-47). The witness described the plaintiff's past employ as medium to heavy work with no transferable skills (R.45). When asked to credit the plaintiff's testimony, the witness testified that there would not be any jobs available to him (R.46). However, if the plaintiff was able to engage in sedentary work, the witness testified that there were many jobs he could perform (R.46).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a continuous period of not
less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or
mental impairment or impairments are of such severity that he is not only unable to
do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3).  These provisions are also applied for purposes of establishing a period of disability.  42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts.  NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970).  Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was awarded Worker's compensation benefits commencing on December 4, 2002 resulting from his injury of December 3, 2002 (R.69-75).

The plaintiff was treated at the University of Pittsburgh Medical Center between March 13, 2003 and September 25, 2003 for a pulmonary embolism. Various studies were conducted (R.188-220).

The plaintiff attended therapy at the West Penn Allegheny Health System between June 2, 2003 and June 17, 2003. The treating physician indicated she could not find objective support for the plaintiff's symptoms and believed the plaintiff could return to work. X-rays revealed mild degenerative spinal changes (R.127-169).

The plaintiff attended physical therapy at the University of Pittsburgh Medical Center during the period from June 2, 2003 through July 16, 2003 (R.170-187).

The plaintiff had a lumbar myelogram performed on August 8, 2003 which noted compression and foreshortening of the S1 nerve root at the L5-S1 level. The remaining neural roots were unremarkable (R.297).

Reports from the Spine and Sports Injury Rehabilitation Center for the period from February 8, 2003 through October 7, 2003 reveal a small disc bulging at L4-L5, L5-S1, disc herniation, and small T10-11 disc protrusion. Conservative treatment was recommended (R.221-227).

The plaintiff was evaluated at the Pain Disability Management Consultants between April 2003 and November 2003 for lumbar radiculopathy and herniated intervertebral discs. Moderate exercise and pain medication were advised (R.286-296).

The plaintiff was treated for back pain between September 4, 2003 and November 4, 2003 at the Wexford Sports Medicine Center. Evidence of an acute deep vein thrombosis was noted (R.228-262).

The plaintiff was treated between April 4, 2003 and November 19, 2003 for a significant venous thromboembolic event, pulmonary embolism and pulmonary infarction. Long term anticoagulant and blood thinning medication were indicated (R.263-285).

After reviewing the medical evidence and in a residual functional capacity assessment completed on January 23, 2004, it is noted that the plaintiff could occasionally lift ten pounds, frequently lift less then ten pounds, and stand or walk for about two hours and sit for about six hours (R.298-305).

The plaintiff was treated for severe back pain by Dr. Peter C. Gerszten between August 8, 2003 and June 7, 2004. A lumbar fusion was performed on May 28, 2004 (R.319-334).

The plaintiff was hospitalized at St. Margaret's Hospital from June 14, 2004 through June 20, 2004 for a small bowel obstruction. He was treated with medication and diet modification. The pain which the plaintiff was experiencing at the time was attributed to his spinal fusion (R.335-414).

The plaintiff was treated by Dr. Mark S. Geordiadis between December 4, 2003 and August 11, 2004 for a pulmonary embolism and right leg venous thrombosis (R. 415-423).

The plaintiff was treated by Dr. Stephen Thomas between January 9, 2004 and March 15, 2005 for post-laminectomy lumbar radicular syndrome. His medication was changed and chiropractic treatment was suggested (R.309-318).

In a physical capacity evaluation completed on July 15, 2005, Dr. Stephen Thomas, a treating physician, noted that the plaintiff could stand, sit or walk for thirty to sixty minutes; that he could not alternate these activities and that he had not released the plaintiff for any form of work. He diagnosed post-laminectomy lumbar pain syndrome and lateral cutaneous neuropathy (R.424-425).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d

309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit-- but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law

Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded,

The claimant is a 38-year-old individual with a high school education and past relevant work at the medium to heavy exertional levels. He alleges that he became disabled on December 3, 2002 due to an injury that caused spinal problems.

\* \* \*

The medical evidence indicates that the claimant has severe impairments in the form of post-laminectomy pain syndrom and deep venous thrombosis, impairments that are "severe" within the meaning of the Regulations ...

Although the claimant was diagnosed with a herniated disc, the evidence of record does not reveal that he has the other necessary signs and symptoms to meet any of the spinal disorders in the ... Listing... Further, the claimant ... engaged in frank symptom magnification, which greatly detracts from his credibility.

\* \* \*

Dr. O'Neill was adamant that the claimant, especially as of March 5, 2003 ... within 4 months of the claimant's injury on December 3, 2003...could have returned to full duty without any type of limitation whatsoever.

\* \* \*

I concur with the findings of the disability determination service doctors ... to the extent that they are consistent with my finding that the claimant can perform a range of sedentary work. However, I find that I gave the claimant the benefit of the doubt and found that he has an even more restrictive residual functional capacity than that found by the doctors of the disability determination service, since I have found, for example ... the he needs a sit-stand option.

\* \* \*

8

> I reject the conclusion of Dr. Thomas ... on July 15, 2005 that the claimant, when combining his ability to sit, stand, and walk, could not perform an 8 hour work day. There is simply no evidence of record prior to July of 2005 that would in any way indicate that the claimant is not capable of performing an 8 hour work day, especially if he is given ... an option to alternate sitting, standing and walking...
>
> Admittedly, the claimant continues to take some medication for pain and muscle spasms. However, there is no indication whatsoever in the objective evidence of record that the claimant's medication imposes any significant side effects...
>
> Consequently, based on my thorough review of the overall evidence of record, including my comprehensive assessment of the claimant's credibility and the overall evidence of record, I find that the claimant indeed has the residual functional capacity to perform a wide range of sedentary work... (R.13-18).

The record demonstrates that the plaintiff suffers from a series of severe ailments, including deep vein and pulmonary thromboses as well as a severe back injury, and that he continues to take medication for pain which interferes with his functional ability. The medical evidence submitted demonstrates that the plaintiff's testimony regarding his symptoms is medically supported and it was only when these symptoms were ignored by the Administrative Law Judge based on some early medical evidence, that the vocational expert was able to conclude that the plaintiff could be gainfully employed. However, the vocational expert made clear, that if believed, the plaintiff's testimony regarding his symptoms would render him unemployable (R.46). In addition, his treating physician corroborated the plaintiff's symptoms and stated that he had not cleared him to return to work (R.424-425). Accordingly, the conclusion of the Commissioner that the plaintiff is not disabled, is not supported by substantial evidence, and in fact substantial evidence exists to support the plaintiff's entitlement to benefits.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, and it appears that the

Commissioner's conclusion is not supported by substantial evidence and the plaintiff is entitled to an award of benefits. For this reason, it is recommended that the plaintiff's motion for summary judgment be granted; that the decision of the Commissioner be reversed and that judgment be entered accordingly.

    Within thirteen days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                  Respectfully submitted,

                                  s/ROBERT C. MITCHELL,
                                  United States Magistrate Judge

Dated: October 18, 2006.